PbaRsost, J.
The distinction between an “ ordinary injunction” to stay an execution upon a judgment at Law, and a “ special injunction” to prevent irreparable injury, is settled.
Li our case, the defendant has established his title to the slaves by a judgment at Law, and the plaintiff seeks to stay execution upon an alleged equity ; there is no suggestion of irreparable injury, and the question now before us is, shall the legal owner be allowed to take possession of his slaves, or must he be required to permit them to remain in the possession of the plaintiffs, until their alleged equity is passed upon? In other words, this is “ an ordinary injunction,” in regard to which the rule is, “ the injunction is dissolved, as a matter of course upon the coming in of the answer, unless the equity ig confessed, or, (according to our practice), unless the answer is defective in not responding to a material allegation, or is unfair or evasive, so that exceptions to it would be sustained.” Lloyd v. Heath, Busb. Eq. 39; Capehart v. Mhoon, ib. 31.
His Llonor in the Court below, sends a statement as follows: “Thebill charges that in 1849, complainant sold to the intestate six slaves, and executed to him separate bills of sale; that the consideration was $13,000, for which the deceased executed his note for $500, with the understanding that the deceased was to sell two of the slaves, pay off the complainant’s debts, and then re-convey the other slaves to the children of complainant. It further charges, that complainant was much embarrassed and of dissipated habits, that intestate was an officer at the time, and had claims in his hands for collection against complainant. It further charges, that intestate did sell two of the slaves for $900, paid off the debts, and induced complainant to give up the note of $500, on the assurance that intestate had or would execute the deeds to complain *211 ant’s children; that complainant retained possession of the slaves, and that the administrator had sued and recovered judgment at law for value of slaves, and thereon intended to sue out execution. Prays for an injunction, &c., &c.
“ The administrator answers; admits complainant’s being indebted ; that the intestate, an officer, had claims against complainant. lie admits sale of negroes at the price of $13,000, the note of $500, the bills of sale, that they were not recorded during life of intestate, and that complainant retained possession of the slaves, but he says the sale was absolute; that the note of $500 was given in payment and not as security ; that the intestate sold two of the slaves at $900; has paid off debts of complainant to at least the sum of $13,000, the vouchers for which were given up to complainant; says nothing as to note of $500; admits complainant’s being greatly in debt, that he was subject to intoxication, but sane at the sale and settlement; and admits that intestate had said it was his intention to re-convey negroes to children of complainant as a gift, and not under the contract, &c., &c.,” and concludes, “ Considering the foregoing facts, it is ordered that the injunction be continued to the hearing, &c.” If his Honor considered this as a “ special injunction,” where the bill is allowed to be read as an affidavit on the part of the plaintiffs, he was in error, for there is no suggestion of irreparable damage, and the defendant had established his right by a judgment at law. This distinction is based on a general principle, and the rule applicable to “ ordinary injunctions,” is not confined to cases where the collection of a debt is enjoined, but embraces all cases where the defendant in Equity has established a right by a judgment at law. Reed v. Kinnaman, 8 Ire. Eq. 13, was decided upon its “ peculiar'circumstances;” and to prevent misconception, that fact is particularly noticed in Lloyd v. Heath, supra. We are consequently at a loss as to the sense in which his Honor uses the word “ facts” in the statement sent. At this stage of the proceeding, (there being no proofs,) only such matters are to be considcred/acte, as are admitted *212 by the answer; the other matters set out in the statement, are allegations merely.
After a careful perusal of the hill and. answer, we do not concur with his Honor in reference to the facts and allegations. Nor do we concur in his conclusion at this stage of the proceeding.
The facts are, in 1849, the plaintiff Richard, being much in debt and of dissipated habits, executed to defendant’s intestate, who was a constable, and had in his hands for collection, several debts against him, three bills of sale of the same date, all absolute on their faces, without any condition or trust, and with general warranty. One for Willis and Augustus, in consideration of $800, the receipt whereof is acknowledged; one for Maria and Minerva, in consideration of $300, the receipt whereof is acknowledged; and one for Nat and Ceney, in consideration of $200, the receipt whereof is acknowledged; and the intestate of defendant executed to plaintiff Richard, a bond for $500, and undertook to pay his debts to an amount equal to the value of Willis and Augustus, it being supposed that these two slaves could be sold for an amount sufficient to pay his debts. Afterwards, the defendant’s intestate sold these two slaves for $900, which he applied to the payment of the debts ; the other slaves were left in the possession of the plaintiff, Richard, who still has them in possession. The bills of sale were not registered in the life time of the intestate, Avho died in 1854, when they were found among liis papers. The defendant administered upon his estate, had the bills of sale registered, and obtained against the plaintiff, Richard, a judgment in an action of detinue.
The plaintiffs allege that the slaves were not sold by the plaintiff Richard to the defendant’s intestate, and although the bills of sale are absolute oil their faces, yet in fact, the intention and understanding was, to pass the title to defendant’s intestate in trust, to make sale of as many of the slayes as would pay the debts, and then to re-convey such of them as were unsold, and any surplus that might remain of the price of those that should be sold (after paying all the debts) to the *213 children of Richard; that the hills of sale and the $500 note, were all drawn and executed at the instance of defendant’s intestate, in whom the plaintiff Richard, had the most implicit confidence. They further allege that after the sale of Willis and Augustus, the defendant’s intestate induced the plaintiff Richard, to deliver up to him the note of $500 upon an assurance, “ that he had destroyed the hills of sale, and that they would never he again seen by the said Richard or any one else.”
There is no allegation, as is set out in the statement of his Honor, that the $500 noté was surrendered “ on the assurance that intestate had, or would execute, the deeds to complainant’s children.”
The defendant positively denies that there was any such understanding, confidence or trust; on the contrary, he avers that the slaves were sold by the plaintiff Richard, to his intestate, absolutely and without any qualification, for the consideration of $1300, which he avers was a full and fair price, and was paid by his intestate in the discharge of debts of the plaintiff' Richard, which fact he avers as of his own knowledge ; because he says he was present when his intestate and plaintiff Richard had a settlement, and his intestate produced vouchers for debts paid to an amount exceeding $1300. These vouchers were judgments, notes, &e., against the plaintiff Richard, which had been paid by defendant’s intestate, as appeared by the receipts endorsed, and at the conclusion of the settlement, these vouchers were delivered up to plaintiff Richard, who was cool, and seemed to understand the business, lie says nothing further in regard to the $500 note, leaving ■it to be inferred, that it was included in the vouchers amounting to $1300 and upwards, which were delivered to the plaintiff Richard ; but he admits that he heard his intestate express the intention to sell the slaves, and with the proceeds to pay off the debts of the plaintiff Richard, and to apply the surplus, if any, to the use of his children, who are the other plaintiffs; “ but it was never spoken of by him as an obligation or duty growing out of his purchase, but only as a purpose of his own; *214 afterwards, however, one of the slaves was badly injured by being burned, and respondent heard his intestate say there would be nothing left to bestow upon the children. Respondent understood these asno other than gratuities intended by him.”
It is settled, that to convert a deed, absolute upon its face, into a security for a debt in the nature of a mortgage, so as to give a right to redeem, besides parol admissions that the deed was intended as a mere security, there must be “facts de-hors,” inconsistent with the idea of an absolute conveyance, and proof of fraud, oppression, ignorance, or mistake, so as to account for the conveyance being absolute on its face, when such was not the intention. Under this doctrine thejyrnty is allowed to set up in himself an equity to redeem against a deed absolute on its face ; whether his ehil&ren can be allowed to set up a trust, so as to entitle them to call for a conveyance, has never been decided. That would seem to violate the maxim, a deed shall not be added to, varied or explained by parol proof. Upon this, however, we are not at liberty, now, to express an opinion. As the case stands there is no admission of any such trust in opposition to the face of the deed, and there are no facts, dehors, inconsistent with the idea of an absolute purchase. True, there are three Mils of sale, when one would have answered the purpose; it is also true, that the vendor was allowed to retain possession of all the slaves except two; and it is also true that the vendee, the intestate, had expressed an intention to lestow, as a gratuity, upon the children of the vendor, any surplus that might remain after paying off his debts; but on the other hand, the price paid vras a full and fair one, and there is a positive amount of debts paid, and the surrender of vouchers upon a settlement to an amount sufficient to cover the value of the property. In this stage of the case, therefore, there is no reason why the law shall not prevail, and the legal owner be allowed to take possession of his property, subject to any equity that the plaintiff s may hereafter be able to establish.
The injunction ought to have been dissolved.
Pee Oueiam. Interlocutory decree reversed.